Thank you, Your Honor. Good afternoon. I'm George Thompson on behalf of the Plaintiff's Court of Appeals, and I'd like to begin by asking the court whether the Commerce Department is required to articulate its reasons for rejecting surrogate country information to be used for evaluation of financial ratios in an anti-dumping review involving Chinese merchandise. Well, in this case, isn't it fair to say that the administration gave some reasons for continuing to adopt the data from the Filipino company? You seem to be complaining that they didn't, that the administration or, for that matter, the treatment judge didn't adequately, in your view, explain why he was not preferring instead the data from the various Indian companies. That's your complaint? Largely, Your Honor, our complaint is that the Commerce Department did not address the We know that they provided positive reasons for using the Philippine data. Well, I read the latter, the reasons in favor of adopting the Philippine data, as essentially saying that it's the best data because it's better than the only alternative, which turns out to be the Indian companies, because the products made by the Philippine company and the techniques used to make them are more similar to the Chinese pencil product and the techniques used to manufacture it than if you used the Indian data. Ah, but there's rub, Your Honor. That's the part I don't understand. There's the rub to you, but I don't understand where the rub is. You're going to have to help me a little bit. Well, the Philippine company manufactures a number of different wood products. So does the Indian company. So do all the companies. So what? And if, to the extent that the wooden products that are manufactured by the Indian companies are comparable to the products manufactured by the Philippine companies, why would one be rejected rather than the other? Because the comparability is not equal. Because the trade administration found, said, asserted that there was a closer comparison between particularly the handicraft line of products of the Filipino company with the pencils than the Indian furniture with the pencils. Well, the Commerce Department found that the Philippine data were comparable using its three-part test, only two of which, two products of which applied. But that reasoning is equally applicable to the Indian data. You're inferring from the Commerce determination that they somehow rejected the Indian data as being qualitatively insufficient. But there's nothing in their discussion to indicate that. It's not at all how I'm reading it. Mr. Thompson, just to hit kind of the same point a little differently, isn't this all just factual? And doesn't this court have somewhat of an obligation to defer to factual findings made by the administration? Your Honor, there is fact. It's a substantial evidence record. But the Commerce Department is obligated to explain its choices. And as the Court of International Trade has found in very analysis. They didn't say nothing. They did explain their choice. You're just saying they didn't explain reasons for rejecting one when they chose another. But that's hardly a full explanation. Besides the same point, all the reasons for saying the Philippine data was a closer analog would be the very same reasons for not selecting instead the Indian data. But we're speculating as to that, Your Honor. You're not speculating. It's a necessary and logical corollary. If you have two options and you choose A because it's better, you're saying B is not as good. But they haven't expressed why B is not as good. And that's the problem. Counsel, they said Asian wood produces a variety of simple wood products similar to pencils in terms of physical characteristics. I mean handicrafts like cabinets, door cabinets, windows, other miscellaneous items, these small handicrafts seem to me to be more like pencils than bedroom furniture. But Asian wood also produces furniture. They specifically highlighted handicrafts, didn't they? Wasn't that specifically highlighted below to commerce and to the CIT? They had all these arguments in front of them. Indeed, but the fact is that Asian wood produces a wide variety of products, most of which are similar in construction and in production processes to furniture. What would you consider substantial evidence to be? Well, the substantial evidence would have to take into account an evaluation of the production processes that are followed. They're making a choice between A and B. They've told us extensively why they selected A. Why is there a lack of substantial evidence there? Because there's no indication that they evaluated similarities or differences between the production processes for the Philippine. The whole choice is between A and B. They chose A. Where's the lack of substantial evidence? I'm still struggling. But they haven't explained why the processes followed by B, the Indian. Well, your argument would make sense to me if the Indian makers also made handicrafts as well as furniture. But the comparison we seem to have is Filipino companies make furniture and handicrafts. Seven Indian companies make furniture, period. So not as close to an analog on production techniques. But is there an evaluation of what is involved in making the handicrafts? We're making the assumption that the handicrafts are little tchotchke types of things, but there's nothing on the record to indicate that. If that's what it's hinging on, they're saying... They list the techniques used in making pencils. And they say those are similar to the techniques used in making rather simple wood products like handicrafts. Well, but those techniques are also used in making furniture. The ones that they point to are cutting, sanding, gluing, and painting wood. Well, that's what's involved in making furniture as well. As a matter of fact, what they point to is the overall production processes for Asian wood. They're not calling out the processes specific to making handicrafts. There's nothing on the record about that. It doesn't tell us anything about that. So we're making an assumption that the handicrafts involved are somehow more analogous to pencil production. But the underlying reason why commerce used Asian wood is the wood. Counsel, so if I read Commerce's statement, we base our determination on the fact that Asian wood produces a variety of simple wood products similar to pencils. Are you saying there's no way that we could logically interpret that sentence as then referring to the handicrafts of Asian woods? You would be putting words in Commerce's mouth. Simple wood products. If they used the word handicrafts, then you wouldn't be here today, but because they used the word simple wood products, is that the reason you're here? Well, that's one of the reasons, yes. They haven't called it out. What they have discussed covers all of Asian wood's products, which includes furniture. How could furniture be a simple wood product for Asian wood, but not be a simple wood product for the Indian producers? I take it it's not a simple wood product for India, but handicrafts are. But they haven't focused on handicrafts, Your Honor. Asian wood produces numerous different products. But the simple wood products, why can't we interpret that as them focusing on handicrafts? I mean, it seems logical to me. Otherwise, you're right. Otherwise, boy, how could Commerce and the CIT possibly have said, Furniture, furniture, Indian, Philippines. We're going to take surrogate agreement, but we'll reject these. That would make no logical sense whatsoever. You'd be absolutely right. So how can, if I'm going to say Commerce and the CIT are not both cuckoo, then simple wood products, it seems to me, has to be handicrafts. Okay, but what percentage of the Asian wood results reflect handicrafts as opposed to the other products? Assuming that we can interpret it that way. And that's not what Commerce said. But if we're going to put a cross on it, how does that leave the Commerce Asian wood data applicable to... Did you introduce data below that suggests what percentage... Was there data below introduced with regard to what percentage of Asian wood products are handicrafts versus furniture? None at all. None at all. That was introduced by the respondents. Okay. Well, even if there was only 1% were handicrafts and 99% were furniture, wouldn't it be a closer analog given the production processes overall that are used than just pure furniture? Well, I would disagree with that. That's almost, that's de minimis. The Commerce Department actually has a preference for more specific data rather than conglomerate. So did it not exist below? Was there no specific data articulating the percentage of products Asian wood manufacturers that are furniture versus cabinets versus windows? Nothing at all. I didn't see that in your briefing. Is that one of your arguments to us now? Well, I'm raising it in response to the questions that you've raised. But no, that's not something that we briefed because Commerce hadn't done that for us. Commerce hadn't done the articulation that you have. Can you help me get clear as to whether you are saying Commerce committed an error of law because they failed to give an adequate explanation of their reason versus Commerce made a wrong decision because the evidence supporting it falls below the substantial evidence line? It's the former, Your Honor. The former. Yes. You're not willing to deal with the deferential fact review standard by this court. You have to do a de novo review of how well Commerce articulated its reason. I don't know that that's a de novo review, Your Honor, but that is what we're asking for. Did Commerce articulate its reasons properly? And in particular, did it express the reasons why the Indian data were going to be rejected? The Court of International Trade has dealt with this issue a number of times and says in making a determination, in making a comparison, you have to look at both sides, especially because the statute says Commerce has to use the best available information. And that necessarily requires a comparison of the two. Well, I don't understand what you're saying. Are you saying despite having a pile of evidence about India, Commerce refused to look at any of it and it only looked at the pile of evidence coming from the Philippines? You're not saying that. I don't know what Commerce looked at. I do know what it addressed. It didn't say word one about the evidence. Well, where is there a case law saying they have to explicitly address the data that they didn't choose as the best as well as explaining the data they did choose as the best? There's a number of CIT cases to that effect, Your Honor. Well, to that effect, maybe. Maybe a little dicta here and there that sort of suggests it in a different context. Now, there are several cases that have hinged on that very question where Commerce made a choice but did not articulate why it rejected the data that it did not use. And these are addressed in the brief. I'll look back at those cases. But my recollection is the failure there was to articulate why it chose what it chose rather than a failure to adequately explain the defects in the data it didn't choose. Well, those cases are cited in our brief, Your Honor. Is it Shanghai Foreign Trade and Allied Pacific Food? Are those the two that you're referring to? Those are two, and Yantai Oriental Juice, as I recall. But in the Timken case in 2005, who said, our law doesn't require that an agency make an explicit response to every argument made by a party. Well, and that's true, Your Honor. And it's usually presented in the International Trade Commission context. But here, where Commerce has been presented with a very specific issue, which involves a choice between two sets of data, I don't see how Commerce could reach a reviewable determination without setting forth its reasons not only for making an affirmative choice but for also making a negative choice. And that's really the crux of the problem. So what relief are you requesting? We're requesting that the case be remanded to Commerce with instructions to provide a rationale for not using the Indian data. So you want us to order Commerce to rewrite its decision documents. Exactly, yes. Expand it. Now, suppose that we were to send it back, just as you were suggesting. And they then add a paragraph that says something like this. The Indian data was viewed as not as reliable or comparable because the Indian companies don't make handicrafts. They only make sophisticated furniture, whereas the Filipino company made a lot of simple products, including handicrafts, et cetera, et cetera. Then the case would come back up here on appeal two or three years later. And we'd what? We'd affirm. What's the point of the whole exercise? Well, Your Honor, it raises a more fundamental question in administrative law, which is given a choice between two positions, does an agency have to address its reasons for not adopting, in this case, a second set of data, especially since the processes that are used to produce the Indian products are very similar to those used for the Philippine products. Counsel, don't we have a whole line of cases? Because, you know, this is not the only agency that ultimately gets appealed to us that talk about a presumption that agencies consider all the evidence before them. Yes, Your Honor. Does that exist? Oh, yes, indeed. And, again, in the International Trade Commission context. Right. So if there's a presumption that the agencies addressed all the evidence before them, we wouldn't need to have that presumption if they were required to articulate decisions with regard to all the evidence before them, right? Because then there would be no need for the presumption. The presumption implies that, in many cases, the agency doesn't articulate reasons with regard to or cites discussions of particular evidence. Well, Your Honor, in this case, the statute requires Congress to make its determination in non-market economy cases based on the best available information. And we would argue that in determining what information is best, there is necessarily going to be a comparison and a discussion of why other information isn't best. So it's a qualitative analysis that doesn't arise in that body of cases that you referenced. All right.  Thank you, Your Honor. Thank you for your time. Good afternoon to you. Good afternoon, Your Honor. Do I have your name close to correct? You're correct. That's pretty high. Thank you. Please proceed. May it please the Court. The trial court correctly held that Congress's use of Philippine producer data is supported by substantial evidence in accordance with law. The trial court should therefore be affirmed. 19 U.S.C. 1677 requires Congress to use the best available information. Well, we know all that. We know all that. Why don't you get to the part where you disagree with me? Musgrave here claims that Congress failed to compare the Indian with the Philippine data simply because the final determination doesn't specifically refer to the Indian data. First, that's incorrect. Congress, in fact, did refer to the Indian data in describing China's first position. But second, even if it were to be true. But he has complained that in the analysis there had to be, but wasn't, an assessment of the deficiencies in the Indian data. He's saying, in effect, there's a per se requirement that the defects in the non-selected country data be explained by the decision-maker. Maybe he's right and maybe he's wrong, but it's a very clear argument. He's wrong, Your Honor. By what lights does he mean? As this court has made clear, the absence of an explicit explanation is immaterial where Congress's decisional path is reasonably discernible. Congress is not required to respond to each and every argument raised by a partner. We're not talking about responding to 20 arguments. We're talking about a choice between data set A and data set B. And Congress clearly said we think A is better. And then he gets a little fuzzy about why A is better. And there's virtually nothing about why B is not as good. Well, I would respectfully disagree. Here, Congress's decisional path is not just reasonably discernible. It's readily apparent. On the one hand, we have the Philippine manufacturer that makes simple wood products. On the other hand, we have a group of Indian manufacturers that make wooden bedroom furniture. Obviously, simple wood products are much more akin to pencils than wooden bedroom furniture. Does Asia wood also produce bedroom furniture? They do, yes. And is the bedroom furniture markedly different from the bedroom furniture of the Indian producers such that Congress could have said, oh, well, the Indian producers are producing this very complicated, ornate, I don't know, high-quality bedroom furniture, whereas Asia woods is producing sort of less ornate, simple, easier, something. You see what I'm getting at. I don't think we know the answer to that. But I think what's key is a couple of things. First, because the court's aware of Congress typically uses a three-part test to determine whether a producer makes identical or comparable merchandise. Congress is required to apply the test by statute, but it's a test that Congress typically applies. The first part of the test focuses on the physical characteristics of the products. Here, Asia wood makes a variety of simple wood products. Asia wood's financial statement says that Asia wood makes all sorts of woodworks, crafts, products, such as furniture cabinets, doors, windows, gates, handicrafts, and the like. Here, Musgrave cites no evidence in the record that the Indian bedroom furniture makers make anything other than bedroom furniture. The second part of the test focuses on the production process. Here, too, Congress... He isn't arguing that the trade administration and Congress used the wrong factors of analysis. He's arguing that their decision didn't explain their analysis. It seems like it's a very different argument than what you're rebutting. Why don't you rebut the argument he made, not the one he could have made but isn't making? Well, here I think Congress's decisional path is clear. The reasons why Congress made the decision it did are clear. But he's saying it can never be clear enough under the requirements of the law unless Congress says both the reasons favoring choosing A and the reasons for rejecting B. That's his argument. Well, I guess I would say two things. One, again, it's clear. If Congress has two choices and it selects A as the best available data, it's clear that it didn't think that B was the best available data. Sure, but the question is why? Why not? What was wrong with the B data? Because on the face of the data, A is better than B. We don't even have to look past the face of the data. Well, if by that logic they wouldn't have to explain why they chose A, much less why they rejected B, it would be obvious on the face of the underlying document. So that can't be right. Well, I'm not sure whether or not Congress does have to explain why it chose A, where it's readily apparent. Sure, it does, because we have case laws saying so. Well, but as this Court has held in Wieland 2, again, where Congress's decisional path is reasonably apparent, Congress doesn't have to provide an explicit explanation for why it reached the decision it did. Now, as I said, Congress also focused on the production process and focused on the complexity and scale of production in reaching its decision. Now, Musgrave says wooden bedroom furniture also involves cutting, sanding, gluing, and painting, but Musgrave misses the point. As the flowchart at page 1074 of the Joint Appendix shows, the production process for making wooden furniture involves a variety of other processes. It involves jointing, drilling, veneer cutting, scaling, grinding, blending, molding, assembling, mending, fashioning, installing. Musgrave fails to provide any evidence that the process for making wooden bedroom furniture is less complex. Is the young lady at counsel table with you from the Commerce Department? Yes, Your Honor. Well, then she will hear it when I suggest to you that the government might be very well advised in a case like this to have a couple more sentences explaining why the data rejected was rejected, because then we'll avoid lots of years and expense and adjudications that might not be necessary. So a word to the wise should be sufficient. Anything further? Your Honor, no. Other than just to say that for all these reasons, we respect the request that the trial court's decision be affirmed. All right. Thank you, Your Honor. And Mr. Thompson, you use all your time and more, but we'll give you two minutes of rebuttal because we have just one request. Thank you, Your Honor. I'll try to keep it under two minutes. One point that both the court and the government has been raising is this supposed dichotomy between simple wood products and furniture. But the discussion in commerce analysis does not distinguish furniture from other simple wood products. The attraction of Asian wood in the preliminary determination, when there was no competing evidence on the record, was that it made simple wood products without qualification. That covered the gamut of what Asian wood was supposedly doing. So this notion that somehow you can distinguish furniture from the other products and that the other products are simple and furniture is not, really doesn't find support in the background to this case or in the administrative record. It also points out that the assumption that furniture is somehow complex compared to the other products involved is, really, there's no basis for that. For example, Asian wood makes... Well, it would certainly seem to be complex in comparison to making pencils. But so is making Philippine furniture. So is making doors and cabinets and windows. That's the point. If what the Philippine producer makes is simple, then so is what the Indian producers make. If what the Philippine producer makes is complex so that the Indian product is also complex, well, they're both at the same level of comparability at that point. Commerce is applying the same standard differently to both data sets. And that is our underlying concern, that they didn't express the rationale why they did that. Thank you very much. All rise. The Honorable Court is adjourned until tomorrow afternoon at 2 o'clock.